R. Craig Clark (SBN 129219)
cclark@clarklawyers.com
Monique R. Rodriguez (SBN 204223)
mrodriguez@clarklawyers.com
**CLARK LAW GROUP**
205 West Date Street
San Diego, CA 92101
Telephone: (619) 239-1321
Facsimile:  (888) 273-4554
*Attorneys for Plaintiffs*

Walter Haines (SBN 071075)
**UNITED EMPLOYEES LAW GROUP**
5500 Bolsa Avenue, Suite 201
Huntington Beach, CA 92649
Telephone: (562) 256-1047
Facsimile:  (562) 256-4554
*Attorney for Plaintiffs Cabrera and McNeely*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SIGFREDO CABRERA, ENKO TELAHUN and CHRISTINE MCNEELY, as individuals, on behalf of themselves, and all other persons similarly situated,<br><br>                    Plaintiffs,<br><br>          v.<br><br>CVS RX SERVICES, INC., a New York corporation, CVS PHARMACY, INC., a Rhode Island corporation; GARFIELD BEACH CVS, LLC, a California limited liability company; and DOES 1 to 10 inclusive,<br><br>                    Defendants. | CASE NO.: 17-cv-05803-WHA<br><br>**CLASS & REPRESENTATIVE ACTION**<br><br>**SECOND AMENDED COMPLAINT FOR DAMAGES, RESTITUTION, INJUNCTIVE RELIEF AND CIVIL PENALTIES:**<br><br>**(1) FAILURE TO PAY MINIMUM WAGES AND OVERTIME COMPENSATION (Labor Code §§ 204, 510, 558, 1194, 1197, 1197.1, and 1198);**<br><br>**(2) FAILURE TO PROVIDE LEGALLY COMPLIANT MEAL PERIODS OR COMPENSATION IN LIEU THEREOF (Labor Code §§ 226.7 and 512);**<br><br>**(3) FAILURE TO PROVIDE LEGALLY COMPLIANT REST PERIODS OR COMPENSATION IN LIEU THEREOF (Labor Code § 226.7);**<br><br>**(4) FAILURE TO PAY WAGES OWED (Labor Code §§ 201, 202, and 203);**<br><br>**(5) FAILURE TO FURNISH ACCURATE** |

**ITEMIZED WAGE STATEMENTS
(Labor Code §§ 226 and 226.3);**

(6) **FAILURE TO MAINTAIN
ACCURATE RECORDS
(Labor Code §§ 226(a), 226.3, and
1174);**

(7) **FAILURE TO REIMBURSE FOR
NECESSARY WORK EXPENSES
(Labor Code §§ 2800 and 2802);**

(8) **UNFAIR BUSINESS PRACTICES
(Bus. & Prof. Code §§ 17200 *et. seq.*);**

(9) **PRIVATE ATTORNEYS GENERAL
ACT OF 2004
(Labor Code §§ 2698 *et seq.*).**

**DEMAND FOR JURY TRIAL**

Plaintiffs Sigfredo Cabrera, Enko Telahun, and Christine McNeely ("Plaintiffs"), by and through their attorneys of record, bring this action on behalf of themselves and all persons similarly situated, against Defendants CVS Rx Services, Inc., CVS Pharmacy, Inc., and Garfield Beach CVS, LLC (collectively "Defendants" or "CVS"), on the following grounds:

## INTRODUCTION

1.      This action is brought by Plaintiffs on behalf of themselves and all current or former employees of Defendants who held non-exempt hourly positions as pharmacists, pharmacy technicians, pharmacy managers, and pharmacy service associates (collectively "pharmacy employees") who worked at CVS locations throughout the state of California, who were not properly compensated for all hours worked, who were not provided with legally compliant meal and rest periods, who were not paid all wages owed upon termination of the employment relationship, who were provided with inaccurate wage statements, who were not reimbursed for necessary work expenses, who were subject to Defendants' unlawful, unfair, and

SECOND AMENDED COMPLAINT

fraudulent business practices, and whose information was not properly maintained by Defendants.

2.      Plaintiffs seek damages, civil penalties, injunctive relief, and restitution, as well as reasonable attorneys' fees and litigation costs, as provided under California law.

3.      All allegations in this Second Amended Complaint ("SAC") are based upon information and belief, except those allegations that pertain to Plaintiffs named herein and their counsel, which are based upon personal knowledge. Each allegation in this SAC has evidentiary support or is likely to have evidentiary support after a reasonable opportunity for further investigation and discovery.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction over this action pursuant to California Code of Civil Procedure ("Code Civ. Proc.") § 410.10.  Pursuant to Code Civ. Proc. § 382, California Business and Professions Code ("Bus. & Prof. Code") § 17203, and California Labor Code ("Labor Code") §§ 2698 *et seq*., Plaintiffs bring this action on behalf of themselves, and on behalf of all persons, as defined herein.

5.      This Court has jurisdiction over this action pursuant to the Class Action Fairness Act, codified as 28 U.S.C. § 1332(d). On October 9, 2017, Defendants removed this action from the Alameda County Superior Court based on evidence that the aggregate claims of the putative Class(es), exclusive of interests, costs, and attorneys' fees, exceeds $5 million.

6.      Venue as to Defendants is proper in this judicial district, pursuant to 28 U.S.C. § 1391.  Defendants transact business and maintain offices in Alameda County and are otherwise within this Court's jurisdiction for purposes of service of process.  The unlawful acts alleged herein have a direct effect on Plaintiffs and those similarly situated within the county of Alameda and the state of California.

7.      Pursuant to Rule 3.400 of the California Rules of Court this case shall be deemed a complex action because it is filed as a class and representative action

and involves specialized case management, extensive discovery and evidence, difficult and/or novel issues, and is likely to require extensive post judgment supervision.

## CLASS DEFINITIONS

8.     The members of the proposed classes are defined as follows during the period commencing on the date that is within four years prior to the filing of the initial complaint and through the present date (hereinafter the "Class Period").  To the extent that equitable tolling operates to toll the claims by the class and/or classes against Defendants, the Class Period should be adjusted accordingly.

      (a)     All current or former non-exempt pharmacy employees employed by Defendants in the state of California who "opted-out" of or did not agree to CVS' arbitration agreement and who suffered any violations of the Labor Code, Business and Professions Code and/or the relevant California Industrial Welfare Commission's ("IWC") Wage Orders during the Class Period.

      (b)     All current or former non-exempt pharmacy employees employed by Defendants in the state of California who "opted-out" of or did not agree to CVS' arbitration agreement and who were not paid for all hours worked in violation of California law during the Class Period.

      (c)     All current or former non-exempt pharmacy employees employed by Defendants in the state of California who "opted-out" of or did not agree to CVS' arbitration agreement and who were not provided with legally compliant meal periods or compensation in lieu thereof in violation of California law during the Class Period.

      (d)     All current or former non-exempt pharmacists employed by Defendants in the state of California who "opted-out" of or did not agree to CVS' arbitration agreement and who were not

4

SECOND AMENDED COMPLAINT

17-cv-05803-WHA

provided with legally compliant meal periods because of
Defendants' practice of scheduling only one pharmacist on-duty
for a period of four to six hours, or who were not compensated for
noncompliant meal periods in lieu thereof in violation of
California law during the Class Period.

(e)     All current or former non-exempt pharmacy employees employed
by Defendants in the state of California who "opted-out" of or did
not agree to CVS' arbitration agreement and who were not
provided with legally compliant rest periods or compensation in
lieu thereof in violation of California law during the Class Period.

(f)     All current or former non-exempt pharmacists employed by
Defendant in the state of California who "opted-out" of or did not
agree to CVS' arbitration agreement and who were not provided
with the opportunity to take legally compliant rest periods due to
Defendants practice of scheduling one pharmacist on duty for a
period of four to six hours, or who were not compensated for
noncompliant rest periods in lieu thereof in violation of California
law during the Class Period.

(g)     All former non-exempt pharmacy employees employed by
Defendants in the state of California who "opted-out" of or did
not agree to CVS' arbitration agreement and who were not paid
all wages owed upon termination of the employment relationship
in violation of California law during the Class Period.

(h)     All current or former non-exempt pharmacy employees employed
by Defendants in the state of California who "opted-out" of or did
not agree to CVS' arbitration agreement and who were not
provided with accurate itemized wage statements in violation of
California law during the Class Period.

5

SECOND AMENDED COMPLAINT

17-cv-05803-WHA

(i)     All current or former non-exempt pharmacy employees employed by Defendants in the state of California who "opted-out" of or did not agree to CVS' arbitration agreement and whose information was not accurately recorded and/or maintained in violation of California law during the Class Period.

(j)     All current or former non-exempt pharmacy employees employed by Defendants in the state of California who "opted-out" of or did not agree to CVS' arbitration agreement and who were not reimbursed for necessary work expenses in violation of California law during the Class Period.

(k)     All current or former non-exempt pharmacy technicians employed by Defendants in the state of California who "opted-out" of or did not agree to CVS' arbitration agreement and who were not reimbursed for their licensing, background check, and travel in violation of California law during the Class Period.

(l)     All current or former non-exempt pharmacy employees employed by Defendants in the state of California who "opted-out" of or did not agree to CVS' arbitration agreement and who were subject to Defendants' unlawful, unfair, and/or fraudulent business practices in violation of California law during the Class Period.

9.      Members of the class and/or classes are all "employees" as the term is used in the Labor Code and the IWC Wage Orders regulating wages, hours, and working conditions in the state of California.

10.     A more precise definition of the class and/or classes may be determined after further investigation and discovery is conducted.

11.     Plaintiff McNeely reserves her right to redefine the class and/or classes under California Rules of Court, rule 3.765(b) and other applicable law at any time prior to the court's order on Plaintiff's Motion for Class Certification.

# THE PARTIES

## I.    PLAINTIFFS

12.    Plaintiff Sigfredo Cabrera, at all material times mentioned herein:

(a)    Was employed by CVS from January 2016 to January 2017 as a non-exempt pharmacy service associate and a non-exempt pharmacy technician;

(b)    Worked at multiple CVS locations, including in Oakland, San Leandro and Palo Alto, California;

(c)    Was paid an hourly wage;

(d)    Was mandated by CVS to complete various training modules;

(e)    Was not paid for all his time spent completing the required training modules;

(f)    Was directed by CVS to work off the clock to meet the needs of the pharmacy and/or complete required training;

(g)    Was not paid for all his time spent working off the clock;

(h)    Was not provided with legally compliant meal periods or compensation in lieu thereof;

(i)    Was not provided with legally compliant rest periods or compensation in lieu thereof;

(j)    Was not paid all wages owed upon termination of the employment relationship;

(k)    Was provided with inaccurate and incomplete wage statements;

(l)    Was not reimbursed for necessary work expenses, including but not limited to the costs for his licensing and background check;

(m)    Was subject to CVS' unlawful, unfair, and fraudulent business practices;

(n)    Believes his payroll records are inaccurate and not properly maintained by Defendants;

7

SECOND AMENDED COMPLAINT

(o)  Is an "aggrieved employee" as defined by Labor Code § 2699(c);

(p)  Complied with all requirements outlined in Labor Code §§ 2698 *et seq.*

13.  Plaintiff Enko Telahun, at all material times mentioned herein:

(a)  Was employed by CVS from June 2010 to February 2017 as a non-exempt pharmacist and a non-exempt pharmacy manager;

(b)  Worked at a CVS location in San Diego, California;

(c)  Was paid an hourly wage;

(d)  Was required by CVS to complete various training modules;

(e)  Was not paid for all time spent completing the various training modules;

(f)  Was required to work off the clock to complete the required training and/or meet the needs of the pharmacy;

(g)  Was not paid for all his time spent working off the clock;

(h)  Was not provided with legally compliant meal periods or compensation in lieu thereof;

(i)  Was not provided with legally complaint rest periods or compensation in lieu thereof;

(j)  Was not paid all wages owed upon termination of the employment relationship;

(k)  Was provided with inaccurate and incomplete wage statements;

(l)  Was not reimbursed for necessary work expenses;

(m)  Was subject to CVS' unlawful, unfair, and fraudulent business practices;

(n)  Believes his payroll records are inaccurate and not properly maintained by Defendants;

(o)  Is an "aggrieved employee" as defined by Labor Code § 2699(c);

SECOND AMENDED COMPLAINT

17-cv-05803-WHA

(p)  Complied with all requirements outlined in Labor Code §§ 2698 *et seq*.

14.  Plaintiff Christine McNeely at all material times mentioned herein:

(a)  Was employed by CVS from March 2014 to July 2016 as a non-exempt pharmacy technician;

(b)  Worked at two CVS locations in Auburn and Grass Valley, California;

(c)  Was paid an hourly wage;

(d)  Was mandated by CVS to complete various training modules;

(e)  Sent an opt-out letter to CVS indicating she did not wish to be bound by the arbitration agreement that she was forced agree to in CVS' mandated training;

(f)  Was not paid for all her time spent completing the required training modules;

(g)  Was directed by CVS to work off the clock to meet the needs of the pharmacy and/or complete required training;

(h)  Was not paid for all her time spent working off the clock;

(i)  Was not provided with legally compliant meal periods or compensation in lieu thereof;

(j)  Was not provided with legally compliant rest periods or compensation in lieu thereof;

(k)  Was not paid all wages owed upon termination of the employment relationship;

(l)  Was provided with inaccurate and incomplete wage statements;

(m) Was not reimbursed for necessary work expenses, including but not limited to the costs for her licensing and background check;

(n)  Was subject to CVS' unlawful, unfair, and fraudulent business practices;

9

SECOND AMENDED COMPLAINT

17-cv-05803-WHA

(o)  Believes her payroll records are inaccurate and not properly maintained by Defendants;

(p)  Is a member of the class and/or classes identified herein.

## II.   DEFENDANTS

15.   Defendant CVS Rx Services, Inc., is a New York corporation, which operates as a subsidiary of CVS Health Corporation that is engaged in the business of providing pharmacy services throughout the United States and the state of California.

16.   Defendant CVS Pharmacy, Inc., is a Rhode Island corporation, which operates as a subsidiary of CVS Health Corporation that is engaged in the business of providing pharmacy services and operating retail stores that sell pharmaceuticals and general merchandise throughout the United States and the state of California.

17.   Defendant Garfield Beach CVS, LLC, is a California limited liability company, which operates as a subsidiary of CVS Health Corporation that is engaged in the business of operating drug and proprietary stores throughout the state of California.

18.   The true names and capacities, whether individual, corporate, subsidiary, partnership, associate, or otherwise of Defendant Does 1 through 10, are unknown to Plaintiffs, who therefore sues these defendants by such fictitious names pursuant to Code Civ. Proc. § 474. Plaintiffs will amend their complaint to allege the true names and capacities of Does 1 through 10 when they are ascertained.

19.   At all times mentioned herein, each defendant acted as an agent, servant, employee, co-conspirator, alter-ego and/or joint venture of the other defendants, and in doing the things alleged herein acted within the course and scope of such agency, employment, alter ego and/or in furtherance of the joint venture.

20.   At all times mentioned herein, the acts and omissions of each of the defendants concurrently contributed to the various acts and omissions of each and every one of the other defendants in proximately causing the wrongful conduct,

10

SECOND AMENDED COMPLAINT

harm, and damages alleged herein.  Each of the defendants approved of, condoned, and/or otherwise ratified each and every one of the acts or omissions complained herein. Each defendant and all doe defendants were and are acting with the authority of each and every other defendant and are acting as agents of each and every other defendant or doe defendant.

## FACTUAL ALLEGATIONS

21.     Plaintiff Cabrera was employed by CVS from approximately January 2016 to January 2017.  During his employment, he worked at CVS locations in Oakland, San Leandro, and Palo Alto, California. Plaintiff Cabrera worked as both a pharmacy service associate and a pharmacy technician and was paid an hourly wage.

22.     Plaintiff Telahun was employed by CVS from about June 2010 to February 2017. During his employment, he worked at a CVS location in San Diego, California. Plaintiff Telahun worked as both a pharmacist and pharmacy manager and was paid an hourly wage.

23.     Plaintiff McNeely was employed by CVS around March 2014 to July 2016. During her employment, she worked as a pharmacy technician and was paid an hourly wage.

24.     Plaintiffs assert that CVS employs individuals as non-exempt pharmacists, pharmacy managers, pharmacy technicians, and pharmacy service associates at its various CVS locations throughout the state of California. To their knowledge pharmacy employees are paid on an hourly basis.

25.     Plaintiffs allege, based on information and belief, that all pharmacy employees in the state of California are subject to the same and/or similar policies, practices, and/or procedures described herein.

26.     As a policy, practice, guideline and/or procedure CVS sets an amount of available work hours for each CVS location based on prescription volume from the previous year.

27.    As a policy, practice, guideline, and/or procedure CVS instructs its store managers and/or pharmacy managers not to go over the set amount of available work hours for each CVS location.

28.    Upon hire, CVS requires all pharmacy employees to complete an extensive, initial training session. As a policy, practice, guideline, and/or procedure CVS also requires pharmacy employees to complete ongoing training sessions, which are offered about once a month.  Plaintiffs understood that they and other pharmacy employees were subject to discipline, including termination, if they did not complete the mandated trainings. To Plaintiffs' knowledge these training sessions are not essential for any state certification, licensing, or regulation.

29.    As a policy, practice, guideline and/or procedure CVS routinely sends notices via email to pharmacy employees when an upcoming training session is required and available for completion. The notices provide information about the upcoming training, a time estimate for completion, and a due date. CVS also sends out reminder notices, as a policy, practice, guideline and/or procedure, to pharmacy employees who have yet to complete the training by the upcoming due date.

30.    Based on information and belief, Plaintiffs allege thereon, that failure to complete the training in a timely fashion may result in disciplinary action, including but not limited to a reduction in assigned work hours.

31.    As a policy, practice, guideline and/or procedure CVS's training modules are typically completed on a CVS web-based training system, usually referred to as LEARNet. Plaintiffs believe that the web-based system keeps record of all log-in and log-out times, as well as the total time the pharmacy employee spends to complete each training module.

32.    As a policy, practice, guideline and/or procedure CVS purportedly permits pharmacy employees to complete their training while clocked in during a scheduled shift.  However, due to CVS's staffing policies, practices, and/or procedures, and the busy nature of the pharmacy, Plaintiffs allege that they and

SECOND AMENDED COMPLAINT

17-cv-05803-WHA

1  other pharmacy employees typically do not have time to complete the required

2  trainings during their scheduled shifts.

3      33.    As a policy, practice, guideline and/or procedure to ensure that

4  pharmacy employees complete their training, CVS provides all pharmacy employees

5  with unique remote access log-in credentials so that they may access the web-based

6  training system from a remote location, such as the employee's home.

7      34.    As a policy, practice, guideline and/or procedure CVS assigns an

8  approximate time frame that each training module should be completed in.

9  However, the trainings often take Plaintiffs and other pharmacy employees more

10 time to complete than the time prescribed.

11     35.    Even though CVS knows or should know that training takes more time

12 than suggested, it has a policy, procedure, guideline and/or practice of instructing

13 store managers to only compensate pharmacy employees for the allocated training

14 time instead of the actual time the pharmacy employees spend completing the

15 training.

16     36.    As a policy, procedure, guideline and/or practice CVS typically uses its

17 cash registers to operate as the CVS timekeeping system.  Based on information and

18 belief Plaintiffs allege thereon, that CVS training system is not integrated with the

19 timekeeping system. CVS does not keep track of training time nor does CVS

20 automatically add the training time to the pharmacy employees' clocked hours at

21 their work locations.  As a result, all training completed off the clock must be

22 entered manually by a store manager, despite the fact that log-in and log-out times

23 are available to CVS through the training software.

24     37.    As a policy, procedure, guideline and/or practice, CVS instructs

25 pharmacy employees to separately track their time spent engaging in training on a

26 separate sheet of paper that allegedly is to be manually entered by a store manager.

27 However, pharmacy employees often endure difficulties with management when

28 reporting their training time due to the direction and pressure by CVS to minimize

labor costs and restrict overtime. CVS's scheme has created a disincentive for store managers to manually enter the actual time pharmacy employees spent completing the training remotely. Ultimately, this scheme has knowingly deterred pharmacy employees from reporting their actual time spent participating in training. Therefore much, if not all, of the time pharmacy employees spend remotely completing the required training is never logged by CVS and the employees are not paid for that time.

38.   CVS is aware and/or should be aware of their failure to compensate pharmacy employees because they have payroll records for all pharmacy employees, as well as training records for all pharmacy employees. From such records, CVS has the capability to determine whether or not a pharmacy employee is appropriately compensated for their time spent participating in the mandated training.

39.   As a policy, procedure, guideline, and/or practice CVS also used its training program to mandate pharmacy employees to participate in a training module entitled "Arbitration of Workplace Legal Disputes" wherein the pharmacy employee could not complete the training without agreeing to arbitrate his or her legal claims. Instead the training quickly informed individuals that they had the "limited opportunity" to "opt-out" by mailing a written notice to CVS indicating that they wished to "opt-out" of the policy.

40.   Plaintiffs McNeely and Telahun were subject to the training module described above.  Plaintiffs allege that they were threatened by management to complete the training thereby making them subject to the agreement.

41.   Shortly after completing the "Arbitration of Workplace Legal Disputes" training module, Plaintiff McNeely and a few other pharmacy employees sent written letters to CVS headquarters stating that they did not wish to be bound by the arbitration agreement.  Plaintiff McNeely further believes that a copy of such letter is included in her personnel file as the pharmacist in charge at the time told her that a copy of the letter was in her file.

42.     Based on information and belief, Plaintiffs assert that CVS provides an arbitration agreement to pharmacy employees upon hire to which some pharmacy employees have elected not to sign.

43.     Plaintiffs further allege that due CVS's policy, practice, guideline and/or procedure of strictly allocating work hours based on prescription volume from the previous year and the busy nature of the pharmacy, they and other pharmacy employees were often directed to work off the clock before and after their scheduled shifts, as well as during their meal and rest periods to meet the needs of the pharmacy and/or to complete the required training. As a result, pharmacy employees often worked more than eight hours in a day, and/or forty hours in a week.

44.     Plaintiffs allege that it is CVS's policy, practice, guideline and/or procedure to discipline pharmacy employees for refusing to work off the clock, such as by reducing the employee's scheduled work hours.

45.     CVS's policies, practices, and/or procedures have knowingly resulted in pharmacy employees not being compensated for some or all the time they were engaged in work.

46.     Plaintiffs further allege that as a policy, practice, guideline and/or procedure CVS required pharmacy employees to clock out for meal periods, even though pharmacy employees were working through their meal periods to meet the needs of the pharmacy and/or complete their required training(s).

47.     Plaintiffs contends that CVS knew or should have known that pharmacy employees were working through their meal periods because (a) various managers, supervisors, and personnel saw pharmacy employees working during their meal periods, (b) LEARNet shows that pharmacy employees were completing trainings, while they were clocked out for a meal period; (c) the work accomplished could not have been completed within the documented number of hours, and (d) Plaintiff

1  Cabrera personally complained to his superiors about not receiving adequate meal
2  and rest periods.

3      48.     California regulations provide that a pharmacist must be on the premises
4  at all times and be fully aware of all activities performed by a pharmacy technician.
5  Plaintiff Telahun contends that as a policy, practice, guideline and/or procedure
6  CVS schedules only one pharmacist on duty for a period of four to six hours.  Due
7  to this scheduling practice, pharmacists, such as Plaintiff Telahun, were not
8  provided with meal periods that were free of all duty, as they were on call during
9  their meal periods and/or were unable to leave the premises. As such, Plaintiff
10 Telahun and other current or former pharmacists were not provided with legally
11 compliant meal periods.

12     49.     Plaintiffs further allege that they and other current or former pharmacy
13 employees did not receive a second meal period when they worked more than ten
14 hours.  This was largely because Plaintiffs and other pharmacy employees were
15 working off the clock as described herein.

16     50.     Plaintiffs and other current or former pharmacy employees were not
17 compensated for noncompliant meal periods as provided by California law.

18     51.     As a policy, practice, guideline and/or procedure CVS did not provide
19 Plaintiffs and other current or former employees with lawful rest periods, despite its
20 written policy due to the busy nature of the pharmacy and the pressure of CVS to
21 meet its goals.

22     52.     Due to CVS's policy, practice, guideline and/or procedure of only
23 scheduling one pharmacist for a period of four to six hours and California
24 regulations, pharmacists, such as Plaintiff Telahun were unable to take off-duty rest
25 periods as they were expected to be on-call and available at all times.

26     53.     Plaintiffs and other current or former employees were not compensated
27 for noncompliant rest periods in violation of California law.

28

54.     CVS also has a policy, practice, guideline and/or procedure of failing to reimburse and/or indemnify Plaintiffs and other current or former pharmacy employees for expenses incurred as a direct result of their employment, such as the use of personal computers and internet to complete the mandatory training from a remote location, even though CVS knew and/or had reason to know that pharmacy employees were completing the training from their personal computers and using their own internet without reimbursement.

55.     Additionally, CVS has a policy, practice, guideline and/or procedure of failing to reimburse and/or indemnify Plaintiff Cabrera and other current or former pharmacy technicians for the costs of their required license, background check, and travel, which were required by CVS.  Thus, CVS knew or had reason to know that pharmacy technicians were not being reimbursed for their required work-related expenses.

56.     Since, CVS failed to pay Plaintiffs and other current or former employees for all time worked, as well as premiums for noncompliant meal and rest periods, CVS willfully failed to pay, in a timely manner, all wages owed to Plaintiffs and other former employees upon termination of their employment.

57.     Due to CVS's policies, practices, and procedures described herein, CVS failed to provide accurate itemized wage statements to Plaintiffs and other current or former pharmacy employees in violation of California law because the wage statements did not properly reflect the number of hours worked, the gross wages and net wages earned, nor was the information properly itemized in a manner pharmacy employees can easily determine the information.

58.     Because of CVS' policies, practices, and procedures, described herein, CVS also failed to maintain accurate records by failing to accurately and properly record all time worked and maintain accurate payroll records as required by California law.

59.     On June 22, 2016, Plaintiff Cabrera submitted notice to the LWDA and CVS informing them of CVS' alleged Labor Code violations pursuant to PAGA. A true and correct copy of the notice is attached hereto as **Exhibit 1** and is incorporated herein by this reference. On August 22, 2017, Plaintiffs Cabrera and Telaun submitted an amended notice to the LWDA, which included Mr. Telahun as an additional representative and included additional facts and theories to support the alleged Labor Code violations, to the LWDA. A true and correct copy of the amended notice is attached hereto as **Exhibit 2** and is incorporated herein by this reference. As of the date of this pleading the LWDA has yet to respond to either notice.  As such, Plaintiffs Cabrera and Telahun now file this representative action in their representative capacity pursuant to Labor Code §§ 2698 *et seq.*

60.     Plaintiffs believe that other violations may be discovered and therefore reserve their right to allege additional violations of law that may constitute violations of the Business and Professions Code and/or Labor Code, as investigation and discovery warrants. In the event Plaintiffs discover other violations through the discovery process, Plaintiffs will seek to amend the operative complaint.

## CLASS ALLEGATIONS

61.     Plaintiff Christine McNeely brings this action on behalf of herself and on behalf of all persons within the defined class and/or classes included herein.

62.     This class action meets the statutory prerequisites for the maintenance of a class action, as set forth in Code Civ. Proc. § 382, Civ. Code § 1781 and the Federal Rues of Civil Procedure ("Fed. R. Civ. P."), Rule 23, in that:

      (a)     The persons who comprise the class and/or classes are so numerous that the joinder of all such persons is impracticable and the disposition of their claims as a class will benefit the parties and the Court;

      (b)     Nearly all factual, legal, statutory, declaratory and injunctive relief issues that are raised in this Complaint are common to the Class and

will apply uniformly to every member of the Class, and as a practical matter be dispositive of the interests of the other members not party to the adjudication;

(c)   The parties opposing the Class have acted or have refused to act on grounds generally applicable to the Class, thereby making final injunctive relief or corresponding declaratory relief appropriate with respect to the Class as a whole; and

(d)   Common questions of law and fact exist as to the members of the Class and predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy, including consideration of:

   i.   The interests of Class Members in individually controlling the prosecution or defense of separate actions;

   ii.   The extent and nature of any litigation concerning the controversy already commenced by or against members of the Class;

   iii.   The desirability or undesirability of concentrating the litigation of the claims in this particular forum; and

   iv.   The difficulties likely to be encountered in the management of a class action.

63.   The Court should permit this action to be maintained as a class action pursuant to Code Civ. Proc. § 382, Civ. Code § 1781, and Fed. R. Civ. P. 23 because:

(a)   Questions of law and fact common to the Class are substantially similar and predominate over any questions affecting only individual members;

1      (b)    A class action is superior to any other available method for the fair

2              and efficient adjudication of Class Members' claims;

3      (c)    The members of the Class are so numerous that it is impractical to

4              bring all Class Members before the Court;

5      (d)    Plaintiffs' claims are typical of the claims of the Class;

6      (e)    Plaintiffs and the other members of the Class will not be able to

7              obtain effective and economic legal redress unless the action is

8              maintained as a class action;

9      (f)    There is a community of interest in obtaining appropriate legal and

10             equitable relief for the common law and statutory violations and

11             other improprieties alleged, and in obtaining adequate compensation

12             for the damages that Defendants' actions have inflicted upon the

13             Class;

14      (g)   Plaintiffs can, and will, fairly and adequately protect the interest of

15             the Class;

16      (h)   There is a community of interest in ensuring that the combined assets

17             and available insurance of Defendants are sufficient to adequately

18             compensate the members of the Class for the injuries sustained; and

19      (i)    Defendants have acted or refused to act on grounds generally

20             applicable to the Class, thereby making final injunctive relief

21             appropriate with respect to the Class as a whole.

22  / / /

23  / / /

24  / / /

25  / / /

26  / / /

27  / / /

28  / / /

SECOND AMENDED COMPLAINT

17-cv-05803-WHA

**CAUSES OF ACTION**

**FIRST CAUSE OF ACTION**

**(By Plaintiff McNeely Individually and on Behalf of the Class(es) against**

**Defendants and Does 1-10)**

**FAILURE TO PAY MINIMUM WAGES AND OVERTIME**

**COMPENSATION**

**[Labor Code §§ 204, 510, 558, 1194, and 1197, 1197.1, and 1198]**

64.     Plaintiff McNeely realleges and incorporate by this reference, all paragraphs of this SAC, the First Amended Complaint filed on September 5, 2017, and the Complaint filed on August 3, 2017.

65.     Plaintiff McNeely alleges that CVS willfully and intentionally violated the Labor Code by failing to adequately compensate her and other current or former pharmacy employees for all hours worked.

66.     Labor Code § 204 establishes the fundamental right of all employees in the state of California to be paid wages in a timely fashion for their work.

67.     Section 1197 of the Labor Code provides, "[t]he minimum wage for employees fixed by the commission is the minimum wage to be paid to employees, and the payment of a lower wage than the minimum so fixed is unlawful."

68.     Pursuant to California law, an employer must pay each employee "not less than the applicable minimum wage for all hours worked in the payroll period, whether the remunerations is measured by time, piece, commission, or otherwise." *Gonzalez v. Downtown LA Motors, LP* (2013) 215 Cal.App.4th 36, 44.

69.     Labor Code § 510(a) provides:

> Eight hours of labor constitutes a day's work.  Any work in excess of eight hours in one workday and any work in excess of 40 hours in any one workweek and the first eight hours worked on the seventh day of work in any one workweeks shall be compensated at the rate of no less than one and one-half times the regular rate of pay for an employee.   In addition, any work in excess of eight hours on any seventh day of a workweek shall be compensated at the rate of no less than twice the regular rate of pay. Nothing in this section

21

SECOND AMENDED COMPLAINT

17-cv-05803-WHA

> requires an employer to combine more than one rate of overtime compensation in order to calculate the amount to be paid to an employee for any hour of overtime work. (Emphasis added.)

70.    An employee may not waive his or her right to overtime compensation and any agreement by the employee to accept less than the statutorily required rate is unenforceable as a matter of law. *Early v. Superior Court* (2000) 79 Cal.App.4th 1420, 1430.

71.    Labor Code § 1194(a) states:

> Notwithstanding any agreement to work for a lesser wage, any employee receiving less than the legal minimum wage or the legal overtime compensation applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of this minimum wage or overtime compensation, including interest thereon, reasonable attorney's fees, and costs of suit.

72.    Labor Code § 558(a) further provides:

> Any employer or other person acting on behalf of an employer who violates, or causes to be violated, a section of this chapter or any provision regulating hours and days of work in any order of the Industrial Welfare Commission shall be subject to a civil penalty as follows:
>
> (1) For any initial violation, fifty dollars ($50) for each underpaid employee for each pay period for which the employee was underpaid in addition to an amount sufficient to recover unpaid wages.
>
> (2) For each subsequent violation, one hundred dollars ($100) for each underpaid employee for each pay period for which the employee was underpaid in addition to an amount sufficient to recover underpaid wages.
>
> (3) Wages recovered pursuant to this section shall be paid to the affected employee.

73.    As a policy, practice, guideline and/or procedure CVS requires all pharmacy employees to participate in regular training. CVS allegedly permits pharmacy employees to complete their training during scheduled shifts or from a remote location by using provided log-in credentials. However, when training is completed off-the-clock, the pharmacy employee's time is not automatically

22

recorded. CVS management must manually enter any training time completed off-the-clock.

74.     CVS has a policy, practice, guideline and/or procedure of instructing and/or requiring store managers to only compensate pharmacy employees for the estimated time for completion of training instead of the actual time spent completing the training. Since, CVS requires store managers to limit their labor costs, CVS's policies, practices, and/or procedures serve as a disincentive for store managers to properly compensate pharmacy employees for their training time.  As a result, pharmacy employees are not compensated the legal minimum wage for all or some of the training time that occurs off-the-clock, and/or at the applicable rate of overtime.

75.     As described herein, CVS has a policy, practice, guideline and/or procedure of limiting the number of available work hours, based on performance from the prior year. CVS instructs its store managers to not go over the set amount of available work hours. As a result, pharmacy employees were often instructed and expected to work off the clock before and after their scheduled shifts, or during their meal and/or rest periods to meet the needs of the pharmacy. If a pharmacy employee refused to work off the clock, the pharmacy employee was often disciplined by having his or her hours cut.

76.     CVS has intentionally created a common scheme and practice to deter pharmacy employees from reporting and being paid for all hours worked.

77.     At all relevant times, Plaintiff McNeely and other current or former pharmacy employees worked more than eight hours in a single workday and/or more than forty hours in a workweek due CVS's mandatory training requirements and limited staffing practice. CVS knowingly failed to compensate pharmacy employees for all hours worked, and/or the applicable overtime in violation of the Labor Code.

78.     By virtue of CVS's unlawful failure to compensate Plaintiff McNeely and current or former pharmacy employees for their time worked, pharmacy

employees have suffered, and will continue to suffer, damages in amounts which are presently unknown to them, but which exceed the jurisdictional limits of this Court and which will be ascertained according to proof at trial.

79.    Having received less than the legal minimum wage and/or applicable rate of overtime compensation, Plaintiff McNeely and other current or former pharmacy employees are entitled to, and now seek to recover all wages owed, penalties, including penalties available under Labor Code § 558, as well as interest, reasonable attorneys' fees and costs pursuant to Labor Code § 1194.

80.    Plaintiff McNeely, on behalf of herself and other current or former pharmacy employees, also requests further relief as described in the below prayer.

## SECOND CAUSE OF ACTION

**(By Plaintiff McNeely Individually and on Behalf of the Class(es) against Defendants and Does 1-10)**

## FAILURE TO PROVIDE LEGALLY COMPLIANT MEAL PERIODS OR COMPENSATION IN LIEU THEREOF

**[Labor Code §§ 226.7 and 512]**

81.    Plaintiff McNeely realleges and incorporate by this reference, all paragraphs of this SAC, the First Amended Complaint filed on September 5, 2017, and Complaint filed on August 3, 2017.

82.    Labor Code § 512(a) provides:

> An employer may not employ an employee for a work period of more than five hours per day without providing the employee with a meal period of not less than 30 minutes, except that if the total work period per day of the employee is no more than six hours, the meal period may be waived by mutual consent of both the employer and employee. An employer may not employ an employee for a work period of more than 10 hours per day without providing the employee with a second meal period of not less than 30 minutes, except that if the total hours worked is no more than 12 hours, the second meal period may be waived by mutual consent of the employer and the employee only if the first meal period was not waived. (Emphasis added.)

83. In pertinent part, Labor Code § 226.7(c) provides:

> If an employer fails to provide an employee a meal or rest or recovery period in accordance with a state law, including but not limited to, an applicable statute or applicable regulation, standard, or order of the Industrial Welfare Commission, the Occupational Safety and Health Standards Board, or the Division of Occupational Safety and Health, the employer shall pay the employee one additional hour of pay at the employee's regular rate of compensation for workday that the meal or rest or recovery period is not provided.

84. Under California law, the meal period requirement is generally satisfied if the employee: (a) has at least 30 minutes uninterrupted; (b) is free to leave the premises; and (c) is relieved of all duty for the entire period. *See Brinker Restaurant Corp. v. Superior Court* (2012) 53 Cal.4th 1004, 1036 [citing DLSE Opn. Letter No. 1996.07.12 (July 12, 1996) p.1].

85. At all relevant times, Plaintiff McNeely and other current or former pharmacy employees were typically scheduled to work an eight-hour day.

86. Plaintiff McNeely alleges that she and other current or former pharmacy employees typically did not receive legally compliant meal periods.

87. Plaintiff McNeely alleges that she and other current or former employees were directed to work through their meal periods to meet the needs of the pharmacy.

88. Meal periods that are not free from all duty and/or are less than thirty (30) minutes violate California law.

89. Plaintiff McNeely believes CVS knew or should have known that she and other current or former pharmacy employees were not receiving legally compliant meal periods because (a) various managers, supervisors, and personal saw pharmacy employees working during their meal periods; (b) LEARNet showed that pharmacy employees were completing training while they were clocked out for lunch, (c) the work accomplished could not have been completed in the number of

documented hours; and (d) Plaintiff McNeely complained to her superiors about not receiving legally compliant meal periods.

90.     Additionally, due to California regulations which require a pharmacist to be on the premises at all times and CVS's policy, practice, guideline and/or procedure of only scheduling on pharmacist on duty for a period of four to six hours, often times pharmacists, were not provided with the opportunity to take a duty-free meal period, as they were often on call and/or unable to leave the premises. As such, pharmacists were not provided with legally compliant meal periods.

91.     Plaintiff McNeely further alleges that she and other current or former pharmacy employees did not receive a second meal period when they worked more than ten hours.  Plaintiff McNeely contends that this largely resulted when pharmacy employees worked off the clock, as described herein.

92.     CVS failed to pay Plaintiff McNeely and other current or former pharmacy employees the required premium wage for each noncompliant meal period, as required by California law.

93.     Due to CVS's unlawful conduct, Plaintiff McNeely and other current or former pharmacy employees suffered, and will continue to suffer, damages in an amount which is presently unknown, but which exceeds the jurisdictional limits of this Court and which will be ascertained according to proof at trial.

94.     Pursuant to Labor Code § 226.7(c) and the relevant IWC Wage Orders, Plaintiff McNeely and other current or former pharmacy employees are entitled to, and seek to, recover the full amount of unpaid premium wages for noncompliant meal periods.

95.     Pursuant to Labor Code § 218.6, Plaintiff McNeely and other current or former pharmacy employees are entitled to, and seek to, also recover prejudgment interest on the amount of premium wages owed.

96.     Plaintiff McNeely and other current or former pharmacy employees are entitled to, and seek to, recover reasonable attorneys' fees as permitted by Labor Code § 218.5.

97.     Plaintiff McNeely, on behalf of herself and other current or former pharmacy employees, requests further relief as described in the below prayer.

## THIRD CAUSE OF ACTION

### (By Plaintiff McNeely Individually and on Behalf of the Class(es) against Defendants and Does 1-10)

### FAILURE TO PROVIDE LEGALLY COMPLIANT REST PERIODS OR COMPENSATION IN LIEU THEREOF

### [Labor Code § 226.7]

98.     Plaintiff McNeely realleges and incorporate by this reference, all paragraphs of this SAC, the First Amended Complaint filed on September 5, 2017, and Complaint filed on August 3, 2017.

99.     In pertinent part, Labor Code § 226.7 provides:

> (b) An employer shall not require an employee to work during a meal or rest or recovery period mandated pursuant to an applicable statute, or applicable regulation, standard, or order of the Industrial Welfare Commission, the Occupational Safety and Health Standards Board, or the Division of Occupational Safety and health.

> (c) If an employer fails to provide an employee a meal or rest or recovery period in accordance with a state law, including but not limited to, an applicable statute or applicable regulation, standard, or order of the Industrial Welfare Commission, the Occupational Safety and Health Standards Board, or the Divisor of Occupational Safety and Health, the employer shall pay the employee one additional hour of pay at the employee's regular rate of compensation for workday that the meal or rest or recovery period is not provided.

100.    At all relevant times, Plaintiff McNeely and other current or former pharmacy employees were typically scheduled to work an eight-hour work day.

101.    Plaintiff McNeely alleges that she and other current or former pharmacy employees regularly did not receive off-duty rest periods despite CVS's written

policy because of busy nature of the pharmacy and the pressure by CVS to meet the stores goals.

102.    Additionally, pharmacists were also unable to take off-duty rest periods due to CVS's policy of only scheduling one pharmacist on duty for a period of four to six hours and California regulations, which require a pharmacist to always be on the premises.

103.    CVS did not compensate Plaintiff McNeely and other current or former pharmacy employees the required premium wage for each noncompliant rest period, as required by California law.

104.    Plaintiff McNeely asserts that CVS knew or should have known that she and other current or former pharmacy employees were not receiving adequate rest periods due to the busy nature of the pharmacy, production, and staffing.

105.    As a result of CVS's unlawful conduct, Plaintiff McNeely and other current or former pharmacy employees suffered, and will continue to suffer, damages in an amount which is presently unknown, but which exceeds the jurisdictional limits of this Court and which will be ascertained according to proof at trial.

106.    According to Labor Code § 226.7(c) and the relevant IWC wage orders, Plaintiff McNeely and other current or former pharmacy employees are entitled to, and seek to, recover the full amount of unpaid premium wages for noncompliant rest periods.

107.    Pursuant to Labor Code § 218.6, Plaintiff McNeely and other current or former pharmacy employees are entitled to, and seek to, also recover prejudgment interest on the amount of premium wages owed.

108.    Plaintiff McNeely and other current or former pharmacy employees are entitled to, and seek to, recover reasonable attorneys' fees and costs as permitted by Labor Code § 218.5.

109.    Plaintiff McNeely, on behalf of herself and other current or former pharmacy employees, requests further relief as described in the prayer below.

**FOURTH CAUSE OF ACTION**

**(By Plaintiff McNeely Individually and on Behalf of the Class(es) against Defendants and Does 1-10)**

**FAILURE TO PAY WAGES OWED**

**[Labor Code §§ 201, 202, and 203]**

110.    Plaintiff McNeely realleges and incorporate by this reference all paragraphs of this SAC, the First Amended Complaint filed on September 5, 2017, and the Complaint filed on August 3, 2017.

111.    The term "wages" is defined in Labor Code § 200(a) to include "all amounts for labor performed by employees of every description, whether the amount is fixed or ascertained by the standard of time…or other method of calculation. Subsection (b) further defines "labor" to include all "labor, work or service whether rendered or performed under contract, subcontract, partnership…"

112.    Labor Code § 201(a) provides: "If an employer discharges an employee, the wages earned and unpaid at the time of discharge are due and payable immediately."

113.    According to Labor Code § 202(a):

> If an employee not having a written contract for a definite period quits his or her employment, his or her wages shall become due and payable not later than 72 hours thereafter, unless the employee has given 72 hours previous notice of his or her intention to quit, in which case the employee is entitled to his or her wages at the time of quitting. Notwithstanding any other provision of law, an employee who quits without providing a 72-hour notice shall be entitled to receive payment by mail if he or she so requests and designates a mailing address. The date of mailing shall constitute the date of payment for purposes of the requirement to provide payment with 72 hours of the notice of quitting.

/ / /

114.    Labor Code § 203 further provides:

> If an employer willfully fails to pay, without abatement or reduction, in accordance with Sections 201, 201.3, 201.5, 202, and 205.5, any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action thereof is commenced; but the wages shall not continue for more than 30 days.

115.    CVS's common scheme of limiting work hours and mandating training, knowingly prevented pharmacy employees from being compensated for all time worked.

116.    A number of pharmacy employees, including Plaintiff McNeely, are no longer employed by CVS.  To date, CVS has yet to pay the wages owed to them as required under California law.

117.    As a consequence of CVS's willful and deliberate refusal to tender such wages, affected pharmacy employees are entitled to, and therefore seek a maximum of 30 days' wages at their daily rate of pay as a waiting time penalty. *See* Labor Code § 203.

118.    Plaintiff McNeely, on behalf of herself and other pharmacy employees, also request further relief as described in the below prayer.

## FIFTH CAUSE OF ACTION

**(By Plaintiff McNeelys Individually and on Behalf of the Class(es) against Defendants and Does 1-10)**

**FAILURE TO FURNISH ACCURATE ITEMIZED WAGE STATEMENTS**

**[Labor Code §§ 226 and 226.3]**

119.    Plaintiff McNeely realleges and incorporate by this reference, all paragraphs of this SAC, the First Amended Complaint filed on September 5, 2017, and the Complaint filed on August 3, 2017.

/ / /

/ / /

120.    Labor Code § 226 states in pertinent part:

> Every employer shall, semimonthly or at the time of each
> payment of wages, furnish each of his or her employees,
> either as detachable part of the check, draft, or voucher
> paying the employee's wages, or separately when wages are
> paid by personal check or cash, an accurate itemized
> statement in writing showing (1) gross wages earned, (2)
> total hours worked by the employee… (4) all deductions…
> (5) net wages earned, (6) the inclusive dates of the period for
> which the employee is paid… (8) the name and address of
> the legal entity that is the employer, and (9) all applicable
> hourly rates in effect during each period and the
> corresponding number of hours worked at each hourly rate
> by the employee…"

121.    Labor Code § 226(e)(1) further provides:

> An employee suffering injury as a result of knowing and
> intentional failure by an employer to comply with
> subdivision (a) is entitled to recover the greater of all actual
> damages or fifty dollars ($50) for the initial pay period in
> which a violation occurs and one hundred dollars ($100) per
> employee for each violation in a subsequent pay period, not
> to exceed an aggregate penalty of four thousand ($4,000),
> and is entitled to an award of costs and reasonable attorneys'
> fees.

122.    Labor Code § 266(h) states "an employee may also bring an action for injunctive relief to ensure compliance with this section and is entitled to an award of costs and reasonable attorneys' fees."

123.    An injury occurs where the employer fails to provide accurate information and the employee cannot "promptly and easily determine" the total number of hours worked or the "applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate." Labor Code § 226(a)(9)-(e)(2)(B)(i).

124.    Labor Code § 226(e)(2)(c) explains that the phrase "promptly and easily determine" means that "a reasonable person would be able to readily ascertain the information without reference to documents or information."

125.    CVS's policies, practices, and procedures related to training, staffing, and payroll records has resulted in wage statements which do not accurately reflect

the gross and/or net wages earned since, CVS has not paid pharmacy employees for all time worked. Additionally, the wage statements and subsequent records do not accurately reflect all time worked, since off the clock time was not properly tracked and/or entered into the payroll system.  Thus, the total hours worked listed on the wage statements are inaccurate. The wage statements also do not properly reflect premium payments received for noncompliant meal and rest periods. As a result, Plaintiff McNeely and other current or former pharmacy employees were unable to readily ascertain from their wage statements whether they were properly compensated.

126.   Pursuant to California law, Plaintiff McNeely and other current or former pharmacy employees are deemed to have suffered injury as a result of CVS's knowing and intentional failure to provide them with accurate itemized wage statements.

127.   According to Labor Code § 226(e), Plaintiff McNeely and other current or former pharmacy employees are entitled to and seek to recover liquidated damages in the amount of $50.00 for the initial violation and $100.00 for each subsequent violation per employee, not to exceed $4,000.00.

128.   Additionally, pursuant to Labor Code § 226(h), Plaintiff McNeely and other current or former pharmacy employees are entitled to, and therefore seek, injunctive relief in order to ensure that CVS complies with Labor Code § 266.

129.   Plaintiff McNeely and other current or former pharmacy employees are entitled to, and seek, attorneys' fees and costs provided by Labor Code § 266(h).

130.   Plaintiff McNeely, on behalf of herself and other current or former pharmacy employees, also request further relief as described in the below prayer.

/ / /

/ / /

/ / /

/ / /

**SIXTH CAUSE OF ACTION**

**(By Plaintiff McNeely Individually and on Behalf of the Class(es) against**

**Defendants and Does 1-10)**

**FAILURE TO MAINTAIN ACCURATE RECORDS**

**[Labor Code §§ 226(a), 226.3, and 1174]**

131.   Plaintiff McNeely realleges and incorporates by this reference, all paragraphs of this SAC, the First Amended Complaint filed on September 5, 2017, and the Complaint filed on August 3, 2017.

132.   In pertinent part Labor Code § 226(a) states "a copy of the statement and the record of deductions shall be kept on file by the employer for at least three years…"

133.   Labor Code § 1174(d) states:

> "[e]very person employing labor in this state shall keep, at a central location in the state or at the plants or establishments at which employees are employed, payroll records showing the hours worked daily by and the wages paid to, and the number of piece-rate units earned by and any applicable piece rate paid to, employees employed at the respective plants or establishments. These records shall be kept in accordance with rules established for this purpose by commission, but in case shall be kept on file for not less than three years. An employer shall not prohibit an employee from maintaining a personal record of hours worked, or, if paid on a piece-rate basis, piece-rate units earned."

134.   Plaintiff McNeely alleges that CVS intentionally and willfully failed to maintain accurate payroll records showing the number of hours worked each day by Plaintiffs and other current or former pharmacy employees, including the time spent engaged in training and working off the clock, because CVS knew or should have known that pharmacy employees were working off the clock as described herein.

135.   As a result of CVS's deliberate and unlawful conduct, Plaintiff McNeely and other current or former pharmacy employees suffered, and continue to suffer, injuries and damages, because CVS has failed to abide by the requirements outlined in the Labor Code.

136.   More specifically, Plaintiff McNeely and other current or former pharmacy employees have been injured because they were denied both their legal right and protected interest, in having accurate and complete payroll records available to them.

137.   Plaintiff McNeely and other current or former pharmacy employees are entitled to and do seek the damages outlined in Labor Code § 226.7(e)(1).

138.   Plaintiff McNeely, on behalf of themselves and other current or former pharmacy employees, also request further relief as described in the below prayer.

### SEVENTH CAUSE OF ACTION

### (By Plaintiff McNeely Individually and on Behalf of the Class(es) against Defendants and Does 1-10)

### FAILURE TO REIMBURSE FOR NECESSARY WORK EXPENSES
### [Labor Code §§ 2800 and 2802]

139.   Plaintiff McNeely realleges and incorporate by this reference, all paragraphs of this SAC, the First Amended Complaint filed on September 5, 2017, and the Complaint filed on August 3, 2017.

140.   Pursuant to Labor Code §§ 2800 and 2802, an employer must reimburse employees for all necessary expenditures incurred by the employee in direct consequence of the discharge of his or her job duties or in direct consequence of his or her job duties or in direct consequence of his or her obedience to the directions of the employer.

141.   Plaintiff McNeely and other current and former pharmacy employees incurred necessary business-related expenses and costs, such as use of a personal computer or device, use of internet, licensing, background check, and travel.

142.   CVS has intentionally and willfully failed to reimburse Plaintiff McNeely and other current or former pharmacy employees for all necessary business-related expenses and costs, even though CVS knew or had reason to know

that employees were using their personal computers/devices and internet for work related activities.

143.   CVS also knew or had reason to know that pharmacy technicians were paying for the cost of their license, background checks, and travel, because they were requirements imposed by CVS.

144.   Plaintiff McNeely and other current or former pharmacy employees are entitled to recover, and therefore seek to recover, from CVS, their business-related expenses and costs incurred during the course and scope of their employment, in addition to interest accrued from the date on which the employee incurred the necessary expenditures at the same rate as judgments in civil actions in the state of California.

145.   Plaintiff McNeely, on behalf of themselves and other current or former pharmacy employees, also requests further relief as described in the below prayer.

## EIGHTH CAUSE OF ACTION

**(By Plaintiff McNeely Individually and on Behalf of the Class(es) against Defendants and Does 1-10)**

**UNFAIR BUSINESS PRACTICES**

**[Bus. & Prof. Code §§ 17200 *et seq.*]**

146.   Plaintiff McNeely realleges and incorporate by this reference, all paragraphs of this SAC, the First Amended Complaint filed on September 5, 2017, and the Complaint filed on August 7, 2017.

147.   As codified in Bus. & Prof. Code §§ 17200 *et seq.*, California's Unfair Competition Law ("UCL") broadly prohibits "any unlawful, unfair or fraudulent business act or practice."

148.   The UCL permits a cause of action to be brought if a practice violates some other law.  In effect, the "unlawful" prong of the UCL makes a violation of the underlying law a per se violation of Bus. & Prof. Code § 17200.  *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.* (1999) 20 Cal.4th 163, 180.

Virtually any law or regulation – federal or state, statutory, or common law – can serve as a predicate for a § 17200 "unlawful" violation. *Farmers Ins. Exch. v. Superior Court* (1992) 2 Cal.4th 377, 383.

149.   Under the UCL, a practice may be "unfair" even if some other law does not specifically proscribe it. *Korea Supply Co. v. Lockheed Martin Corp.* (2003) 20 Cal.4th 1134, 1143 [internal citations omitted]. Pursuant to the California Supreme Court, the "unfair" standard is intentionally broad to allow courts maximum discretion in prohibiting new schemes to defraud. *Cel-Tech Commc'ns, Inc., supra*, 20 Cal.4th at 180-181.

150.   A business act or practice is deemed "fraudulent" under Bus. & Prof. Code § 17200 where "members of the public are likely to be deceived." *Blakemore v. Superior Court*, (2005) 129 Cal.App.4th 36, 49. A showing of actual deception, reasonable reliance, or damages is not required. *Id*. The fraudulent prong may be used to attack the deceptive manner in which otherwise lawful contract terms are presented to an individual. *Boschma v. Home Loan Ctr., Inc.* (2011) 198 Cal.App.4th 230, 253. As such, even a true statement may be unlawful under § 17200 if it is "couched in such a manner that is likely to mislead or deceive…, such as by failing to disclose other relevant information." *Id*.

151.   As discussed herein, CVS's business practices violate all three prongs of California's UCL.

<u>Unlawful</u>

152.   As described herein, CVS violated the Labor Code by refusing to properly compensate pharmacy employees for all time worked.  Failure to compensate pharmacy employees for all time worked is a clear violation of California law, and thus a per se violation of the UCL. *Cel-Tech Commc'ns, Inc., supra*, 20 Cal.4th at 180. Additionally, CVS failed to compensate pharmacy employees for non-compliant meal and rest periods as provided by California law. CVS's failure to promptly pay wages owed upon termination, failure to furnish

accurate wage statements, failure to reimburse for necessary business expenses, as well as failing to maintain accurate records are also violations of California law. CVS has therefore engaged in unlawful business practices pursuant to Bus. & Prof. Code § 17200.

<u>Unfair</u>

153.   CVS's practice of minimizing available work hours and staff, as well as requiring pharmacy employees to work off the clock is an inherently unfair practice because it knowingly prohibits pharmacy employees from being compensated for all hours worked.

154.   CVS's practice of failing to provide off-duty meal and rest periods to its pharmacy employees, is an unfair practice because it knowingly strips pharmacy employees of the rights and protections afforded to them by the Labor Code.

155.   CVS's practice of failing to pay prompt wages upon termination, failing to provide itemized and accurate wage statements, and failing to reimburse for necessary business expenses are also unfair practices because such practices are contrary to the Labor Code, as well as unethical.

<u>Fraudulent</u>

156.   CVS's practice of providing Plaintiff McNeely and pharmacy employees with inaccurate and incomplete wage statements is not only unlawful but constitutes a fraudulent business practice under the UCL. This is particularly true as Plaintiff McNeely and other pharmacy employees are likely to be, and actually are deceived as to their earned wages because they are unable to determine from their wage statements whether or not they were paid for all work performed.

157.   CVS's practice of failing to maintain accurate records is also a fraudulent business practice because the lack of records intentionally mislead Plaintiff McNeely and other pharmacy employees as to their total hours worked and total wages earned.

158.   As a direct and proximate result of CVS's unlawful, unfair, and fraudulent business practices, Plaintiff McNeely and other current or former pharmacy employees have suffered injury-in-fact and have lost wages rightfully owed to them.

159.   Through their unlawful, unfair, and fraudulent conduct, CVS has been unjustly enriched by receiving and continuing to receive benefits and profits at the expense of pharmacy employees. Therefore, pursuant to Bus. & Prof. Code § 17200, CVS should be enjoined from this activity and made to disgorge all ill-gotten gains and restore Plaintiff McNeely and other current or former pharmacy employees the wages wrongfully withheld from them.

160.   The unlawful, unfair, and fraudulent conduct alleged herein has continued, and there is no indication that CVS will refrain from such activity in the future. This is especially true since CVS has purposefully created an atmosphere that deters the accurate reporting of work time. Plaintiff McNeely believes and alleges that if CVS is not enjoined from the conduct described herein, they will continue to violate California law at the expense of its pharmacy employees.  Accordingly, Plaintiff McNeely requests that the Court issue a preliminary and permanent injunction against CVS.

161.   Plaintiff McNeely, on behalf of herself and other current or former pharmacy employees, also request further relief as described in the below prayer.

**NINTH CAUSE OF ACTION**

**(By Plaintiffs Cabrera and Telahun in their Representative Capacity against Defendants and Does 1-10)**

**PRIVATE ATTORNEY GENERAL ACT OF 2004**

**(Labor Code §§ 2698 *et seq*.)**

162.   Plaintiffs Cabrera and Telahun reallege and incorporate by this reference, all paragraphs of this SAC, the First Amended Complaint filed on September 5, 2017, and the Complaint filed on August 3, 2017.

163.   The Private Attorneys General Act of 2004 ("PAGA") expressly provides that any provision of the Labor Code allowing for a civil penalty to be assessed and collected by the Labor and Workforce Development Agency ("LWDA"), or any of its departments, division, commissions, boards, agencies, or employees, for a violation of the Labor Code may be recovered through a civil action brought by an aggrieved employee on behalf of himself or herself, and other current or former employees. These civil penalties are in addition to any other relief available under the Labor Code, and pursuant to Labor Code § 2699(i), must be allocated seventy-five percent (75%) to the LWDA and twenty-five percent (25%) to the aggrieved employees.

164.   During all, or a portion of, the one-year period before Plaintiffs Cabrera and Telahun filed notice of their claims with the LWDA. Plaintiffs Cabrera and Telahun and each of the other current or former employees they represent were employed by Defendants in the state of California.

165.   Plaintiff Cabrera, Plaintiff Telahun and other current or former pharmacy employees are "aggrieved employees" under PAGA, as they were employed by Defendants within the past year and suffered one or more violations of the Labor Code.

166.   Plaintiffs Cabrera and Telahun have complied with the notice requirements outlined in Labor Code § 2699.3.  On June 22, 2016, Plaintiff Cabrera submitted notice to the LWDA and Defendants informing them of CVS's alleged Labor Code violations pursuant to PAGA. *See* Exhibit 1. The LWDA had until August 28, 2017 to provide notice of whether it intended to investigate the alleged violations. As of the date of this SAC, the LWDA has not provided notice of whether it intends to investigate the alleged violations.  Therefore, pursuant to Labor Code § 2699.3, Plaintiff Cabrera has the right to, and does seek to pursue his claims under PAGA in a representative capacity.

167.   On August 22, 2017, Plaintiffs Cabrerea and Telahun submitted an amended notice which included Mr. Telahun as an additional representative and included additional facts and theories to support the alleged Labor Code violations, to the LWDA. *See* Exhibit 2. The LWDA has 65 days from the date of submission to notify the parties whether it intends to investigate. As of the date of this SAC, the LWDA has not provided notice of whether it intends to investigate the alleged violations.  Therefore, pursuant to Labor Code § 2699.3, Plaintiffs Cabrera and Telahun have the right to, and do seek to pursue their claims under PAGA in a representative capacity.

168.   As set forth herein, CVS has committed, and continues to commit, numerous violations for which the Labor Code entitles Plaintiffs Cabrera and Telahun, in their representative capacity, to recover, on behalf of themselves and all other current or former employees, and the general public, attorneys' fees and costs, as well as statutory penalties against CVS for its Labor Code violations.

169.   Plaintiffs Cabrera and Telahun, in their representative capacity, seek to recover civil penalties pursuant to PAGA for violations of the following Labor Code provisions for the reasons described herein:

(a)   Failure to pay minimum wages and overtime compensation in violation of Labor Code §§ 204, 510, 1194, 1197, 1197.1, and 1198 and relevant IWC Wage Orders;

(b)   Failure to provide legally compliant meal periods or compensation in lieu thereof in violation of Labor Code §§ 226.7 and 512 and relevant IWC Wage Orders;

(c)   Failure to provide legally compliant rest periods or compensation in lieu thereof in violation of Labor Code § 226.7 and relevant IWC Wage Orders;

(d)   Failure to pay wages owed in violation of Labor Code §§ 201 – 203;

(e)   Failure to furnish accurate itemized wage statements in violation of Labor Code §§ 226 and 226.3 and relevant IWC Wage Orders;

(f)   Failure to maintain accurate records in violation of Labor Code §§ 226, 226.3, and 1174 and relevant IWC Wage Orders;

(g)   Failure to reimburse for necessary work expenses in violation of Labor Code §§ 2800 and 2802.

170.   Labor Code § 226.3 imposes a civil penalty of $250 per pharmacy employee per violation and $1,000 per pharmacy employee for each subsequent violation of Labor Code § 226(a).  Therefore, Plaintiff Cabrera, Plaintiff Telahun and other current or former employees are entitled to and seek the described civil penalty.

171.   Labor Code § 2699(f) imposes a civil penalty of $100 per pay period, per pharmacy employee for initial violation, and $200 per pay period, per pharmacy employee for each subsequent violation for all Labor Code provisions for which a civil penalty is not specifically provided, including Labor Code §§ 201, 202, 203 204, 226, 226.3, 226.7, 510, 512, 1174, 1194, 1197, 1197.1, 1198, 2800, 2802. Plaintiff Cabrera, Plaintiff Telahun and other current or former employees are entitled to, and therefore seek the above described civil penalty.

172.   Lastly, Labor Code § 2699(g)(1) provides that an employee who prevails in a civil action brought pursuant to PAGA shall be entitled to an award of reasonable attorneys' fees and costs. As such, Plaintiff Cabrera and Plaintiff Telahun are entitled to and therefore seeks attorneys' fees and costs.

173.   Plaintiffs Cabrera and Telahun, in their representative capacity, request further relief as described in the below prayer.

/ / /

/ / /

/ / /

/ / /

## **PRAYER FOR RELIEF**

Plaintiffs, in their respective capacities, pray for judgment against Defendants as follows:

1. For an order determining that this action may be maintained as a class action with Plaintiff McNeely as the class representatives;

2. For the attorneys appearing on the above caption to be named class counsel;

3. For an order determining that this action may be maintained as a representative action with Plaintiffs Cabrera and Telahun as the representatives;

4. For all minimum wages and overtime compensation owed pursuant to Labor Code §§ 510, 1194, 1197.1, and/or other applicable law;

5. For premium wages, pursuant to Labor Code § 226.7 and/or other applicable law;

6. For waiting time penalties pursuant to Labor Code § 203 and/or other applicable law;

7. For damages, pursuant to Labor Code § 226 and/or other applicable law;

8. For unreimbursed business expenses, pursuant to Labor Code §§ 2800 and 2802 and/or other applicable law;

9. For all liquidated damages, pursuant to Labor Code §§ 226(e), 1194.4(a), 1197.1, and/or other applicable law;

10. For civil penalties, pursuant to Labor Code §§ 558, 1197.1, and/or other applicable law;

11. For PAGA civil penalties pursuant to Labor Code §§ 2698 *et seq.*;

12. For injunctive relief, pursuant to Labor Code § 266(h), Bus. & Prof. Code § 17203, and/or other applicable law;

13. For restitution for Defendants' unfair, unlawful, and fraudulent business practices;

14. For reasonable attorneys' fees and costs of suit pursuant to Labor Code §§ 266(e)(1), 2699(g), 1194, and/or other applicable law;

15. For pre-judgment and post-judgment interest as provided by California law;

16. For appropriate equitable relief; and

17. For all such other and further relief, the Court may deem just and proper.

Dated:  March 19, 2018                                **CLARK LAW GROUP**



By:  */s/ R. Craig Clark*
R. Craig Clark
Monique R. Rodriguez
*Attorneys for Plaintiffs*

**DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand a jury trial on all issues so triable.

Dated:  March 19, 2018                                **CLARK LAW GROUP**



By:  */s/ R. Craig Clark*
R. Craig Clark
Monique R. Rodriguez
*Attorneys for Plaintiffs*

43
SECOND AMENDED COMPLAINT

17-cv-05803-WHA

**DECLARATION OF SERVICE**
*Sigfredo Cabrera & Enko Telahun v. CVS Rx Services, Inc. et al.*
United States District Court, Northern District of California, Case No. 3:17-cv-05803-WHA

I am employed in the county of San Diego, state of California. I am over the age of 18 and not a party to this action. My business address is 205 West Date Street, San Diego, CA 92101. On March 19, 2018, I served the document(s) described as:

**1. Second Amended Complaint.**

On the following interested parties and in the manner as follows:

| | |
|---|---|
| Tyler R. Andrews | James N. Boudreau |
| GREENBERG TRAURIG, LLP | Christina L. Signs |
| 3161 Michelson Drive, Suite 1000 | GREENBERG TRAUGI, LLP |
| Irvine, CA 92612 | 2001 Market Street #2700 |
| Telephone: (949) 7 32-6500 | Philadelphia, PA 19103 |
| Facsimile: (949) 732-6501 | Telephone: (215) 988-7868 |
| *Attorney for Defendants* | Facsimile: (215) 717-5232 |
| | *Attorneys for Defendants* |

☒ **BY ELECTRONIC ACCESS:** pursuant to Local Rule 5-1, I hereby certify that the above documents were uploaded to the ECF website and will be posted on the Website by the close of the next business day and the webmaster will give e-mail notification to all parties.

☐ **BY U.S. MAIL:** by placing the document(s) listed above in a sealed envelope for collection and mailing following our ordinary business practices. I am readily familiar with      our ordinary business practices for collecting and processing mail for the United States Postal Service, and mail that I place for collection and processing is regularly deposited with the United States Postal Service that same day with postage prepaid.

☐ **BY OVERNIGHT DELIVERY:** by enclosing the document(s) in an envelope or package provided by an overnight delivery carrier and addressed to the person(s) at the addresses listed above. I placed the envelope or package for collection and overnight delivery at an office or a regularly utilized drop box of the overnight delivery carrier.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct and that this declaration was executed on March 19, 2018, at San Diego, California.

_____
Andrea Gorriño

1
**DECLARATION OF SERVICE**